## MATTER OF TAYEB

## In Deportation Proceedings

### A-12937196

*Decided by Board May 21, 1968*

Notwithstanding his recent marriage to a U.S. citizen, a native and citizen of Libya who originally came to this country as a student in 1961 on a scholarship financed by his government with the understanding he would return to Libya so his country would benefit from his education and who in 1964 decided against returning but did not notify his government of that intention, is denied adjustment of status under section 245, Immigration and Nationality Act, as amended, as a matter of discretion, in view of his lack of a showing of good faith in his dealings with his government; there is no evidence the Government of Libya has accepted his offer to repay the cost of his education here; and the Department of State advises that approval of the application would have an adverse effect on relations with the Government of Libya.

CHARGE:

Order: Act of 1952—Section 241(a)(2) [8 U.S.C. 1251(a)(2)]—Remained longer—student.

ON BEHALF OF RESPONDENT:
Richard Harrington, Esquire
593 Market Street
San Francisco, Calif. 94105
(Brief submitted)

ON BEHALF OF SERVICE:
Irving A. Appleman
Appellate Trial Attorney

Stephen M. Suffin
Trial Attorney
(Brief filed)

The case comes forward on appeal from the order of the special inquiry officer dated January 31, 1968, denying the application for status as a permanent resident under section 245 of the Immigration and Nationality Act; granting voluntary departure in lieu of deportation with the alternative order that if the respondent failed to leave when as required he be deported to Germany on the charge contained in the order to show cause; further ordering that if Germany was unwilling to accept the respondent or failed to so advise within three months following original inquiry, he be deported to Libya; and further ordering that respondent's application under section 243(h) of the Immigration and Nationality Act to withhold deportation to

Libya because of persecution by reason of his political opinion be denied.

The record relates to a native and citizen of Libya, 27 years old, who last entered the United States as a student at New York on August 7, 1965. Extensions of student status were granted until March 16, 1967. On March 27, 1967, his application for permanent residence status under section 245 of the Act was denied and he was given until December 27, 1967 within which to depart voluntarily from the United States. He has failed to so depart and is deportable on the charge contained in the order to show cause.

At the deportation hearing the respondent reapplied for status as a permanent resident. He orginally came to the United States as a student in 1961 under a scholarship awarded by the Libyan Government. He was aware that he was expected to return to Libya so that his country would benefit from his education. The expenses of his education in this country amount to approximately $20,000. In 1964 he decided against returning to Libya but did not notify the government of that country of his intention. He testified that he saw no point in so doing and further admitted that one of the reasons could have been the possible loss of his scholarship. He received a degree of Bachelor of Science in Electrical Engineering from the University of California on June 13, 1967, and is presently employed by that University.

The respondent married a United States citizen on December 14, 1967. It is noted that the date of his marriage is subsequent to the denial of his application for adjustment of status by the District Director on November 27, 1967. The respondent states that he is willing to repay the cost of his education at a starting rate of $1,000 per year, but there is no evidence that this offer has been accepted by the Libyan Government. He testified that by reason of his marriage to a non-Libyan, he would be disqualified from working for the Government of Libya, but this claim is also unsupported.

The grant of adjustment of status pursuant to section 245 of the Immigration and Nationality Act, is by its very terms, entrusted to the discretion of the Attorney General. The respondent has submitted a letter from the University of California, dated December 6, 1967 which describes an expected contract from NASA to prepare an experiment for an Apollo Applications mission, and that the respondent is expected to be a key person in discharging their responsibility under this contract. Meanwhile he has been working on another project, an evaluation of the White Mountains for an infrared observatory. Upon questioning, it developed that outside of the fact that respondent was an electrical engineer, he had no special qualifications for the

740

project other than some laboratory work, and that the difficulty would appear to be one of recruitment of a replacement.

A letter from the Department of State, dated November 13, 1967, advises of a letter received from the Embassy of Libya which is dated October 23, 1967 and is enclosed. The Department of State observes that the Libyan Government has recently decided to send a large number of its top secondary school graduates to the United States for higher education and that the loss of a person such as the respondent might tend to discourage a trend of Libyan training practices that the department strongly favors. Therefore the department is of the opinion that the approval of the application would have an adverse effect on relations with the Government of Libya.

The communication from the Counselor of the Embassy of the Kingdom of Libya, referred to above, recites that scholarships are awarded to those worthy young Libyans who possess the highest qualifications and potential; the recipients are under moral and legal obligation to return to their homeland and to repay with several years of service the huge investment made in them by their government; when the respondent accepted the scholarship from the Libyan government, he was well aware of these conditions and that he would be violating his agreement with the Libyan government by remaining in the United States. The communication concludes that the respondent, who has benefitted so greatly from his country's concern and generosity, should return to Libya and contribute to his country's progress and development.

The special inquiry officer refers to the decision in *Matter of Youssef*, 11 I. & N. Dec. 163, as controlling in the instant case. In that case a student from the United Arab Republic who came to the United States on a scholarship from his government to do graduate work, entered into an agreement with his government that he would not marry without its permission, that after obtaining a Ph.D. degree he would work for his government for a maximum period of seven years, and that if he did not comply with these conditions, he agreed to refund all money received by him in the form of salary and expenses while he was under scholarship; and who, by a subsequent marriage to a United States citizen without permission, broke the contract, noncompliance with which committed him to refund all the money he received under this scholarship. Adjustment of status under section 245 was denied as a matter of discretion in the absence of a showing that his government did not want him back or that he had made adequate financial arrangements to discharge his obligations to his government, or that he had been relieved of this obligation.

741

While we agree with the denial of the visa petition, we do not feel restricted to the precedent cited by the special inquiry officer in the instant case. In addition to a lack of showing of good faith on the part of the respondent in his dealings with the Libyan government, his marriage to a United States citizen occurred on December 14, 1967, a date which was subsequent to the denial of his application for adjustment of status under section 245 by the District Director on November 27, 1967. His wife was aware of his immigration status at the time she married him. We do not consider this recent marriage to a United States citizen a factor sufficiently favorable as to outweigh the other unfavorable aspect of the case which has been outlined above. Upon a full consideration of the entire record, it is concluded that the application for adjustment of status under section 245 should be denied as a matter of discretion. We believe the argument of counsel regarding the necessity for a waiver in the case of an exchange student to be entirely irrelevant.

The respondent has made application under section 243(h) of the Immigration and Nationality Act for withholding of deportation to Libya on the ground that he would be persecuted. He testified there are many things about the system of government in Libya of which he does not approve and which he believes he will voice if returned to that country. However, he admitted that if he did remain silent, he would suffer no persecution. The respondent has offered no documentary evidence of the likelihood of persecution. In our opinion the respondent has not established that he would be subject to persecution on account of race, religion or political opinion or even the probability of such persecution. We concur in the decision that the application for withholding of deportation should be denied. The appeal will be dismissed.

**ORDER:** It is ordered that the appeal be and the same is hereby dismissed.